Fred Allen BERRY, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

Oct. 22, 1974.

Certiorari Denied by Supreme Court
April 14, 1975.

Arthur M. Fowler, Loudon, for plaintiff in error.

David M. Pack, Atty. Gen., Wm. C. Koch, Jr., Asst. Atty. Gen., Nashville, H. Kenneth Deatherage, Dist. Atty. Gen., Kingston, for defendant in error.

RUSSELL, Judge.

## OPINION

Fred Allen Berry, indigent and represented by appointed counsel, appeals his conviction for voluntary manslaughter and two (2) to ten (10) year penitentiary sentence. The legal sufficiency of the factual evidence presented by the State, both as it established the identity of the victim and

also the cause of death, and as it established guilt, constitutes the main question in this case.

The alleged victim of this homicide was the estranged wife of Berry, from whom he had been separated for three years. Mrs. Berry and their three children had been living with her mother, a Mrs. Irene Gentry, while Berry had apparently been living in Georgia. Mrs. Berry disappeared on February 14, 1973. On April 13, 1973, the body which the State contends was hers was found. Identification of the body and establishment of the cause of death were made out only circumstantially, but we hold that the evidence of both was legally sufficient.

The State's proof was that Berry appeared at the Loudon County Jail at 11 p. m. on February 13, 1973, and asked Deputy Sheriff Luke Bright to help him to find out where his mother lived. Deputy Bright drove Berry to Philadelphia, Tennessee, and finally located the home. Berry told the officer that he had returned from Georgia to get his wife and take her back to Georgia with him.

The next morning two of Berry's sisters drove him to their aunt's home, where he made a telephone call to someone asking them to meet him at a restaurant for a talk. About an hour later he arrived at the Gentry home, where his estranged wife refused to let him see their three children so he left. About half an hour later Mrs. Berry left home on foot wearing a sweater, pants and a pair of black boots belonging to her mother. A short time thereafter a neighbor saw her walking past her home with a man with dark brown hair. Another witness saw a scuffle between a man and a woman at the Huff barn on Stickee Road at about this time. That barn is where the body which the State submits is that of Mrs. Berry was subsequently found.

Late the same day Berry went to the home of another one of his sisters and told her and her husband that he had strangled Carolyn Ann Berry and had disposed of her body somewhere on Stickee Road. He was very nervous, so after about twenty minutes they drove him back to his mother's home. The defendant subsequently called Mrs. Gentry, mother of Mrs. Berry, and told her that he and her daughter were going to be married again.

After Mrs. Gentry reported her daughter as missing the local authorities conducted a search. There had been an anonymous telephone call that she was buried in the Huff barn, but the police didn't search the loft so didn't find the body until a return trip weeks later (April 13, 1973) when the badly decomposed body was found in the loft covered by bales of hay.

The defendant was subsequently arrested in Georgia. He made no confession to authorities. He offered no proof upon the trial.

The body which was found was badly decomposed. It could not be identified by viewing it, and was too badly decomposed for the cause of death to be determined. Mrs. Berry's mother unequivocally identified the boots found upon the body as those worn by her daughter when she disappeared, and another witness was able to identify the striped pants.

The circumstantial evidence shows that Berry was seeking and finally found his wife on the day that she was last seen alive, and that same day he told his sister and brother-in-law that he killed her. This confession is direct evidence. The hypothesis that the death was from natural causes is further negated by the fact that the body was under bales of hay in a barn, which is totally inconsistent with death by natural causes or accident.

The identity of the body as that of Mrs. Berry is made out by her disappearance at that time, the confession of Berry, and the identification of the clothing upon the body as being that worn by Mrs. Berry

when last seen. While the identity of the body is an essential element of the corpus delicti in Tennessee, it may be proved by circumstantial evidence, especially where that is the best proof attainable. Bolden v. State, 140 Tenn. 118, 203 S.W. 755 (1918). Identification of a decomposed, burned, or mutilated body, or portion thereof, is frequently established by evidence showing a similarity between the physical characteristics of the remains and of the victim, coupled with evidence that the clothing, or fragments thereof, found on or near the remains was the same as, or similar to, clothing worn by the victim. 86 A.L.R.2d homicide—Identification of Victim § 10[h] p. 771, 2; Lancaster v. State, 91 Tenn. 267, 18 S.W. 777 (1892). Circumstantial evidence of the identity of a body may be found in the correspondence of peculiar physical characteristics, or in clothing, or articles found in connection with the remains. 41 C.J.S. Homicide § 313, pp. 23, 24. Cathey v. State, 191 Tenn. 617, 235 S.W.2d 601 (1950).

We are not only satisfied with the sufficiency of the evidence establishing the identity of the body, but we also hold that the cause of death is circumstantially shown by the confession and the secretion of the body, and the fact that the other circumstances shown by the evidence are consistent with the strangulation death confession. Certainly it is not the law that the cause of death must be scientifically proven in every case. In many homicides this would be impossible, where, as here, there was substantial or total decomposition of the body. See Cathey v. State, supra; Bryant v. State, Tenn.Cr.App., 503 S.W.2d 955 (1973); Franklin v. State, 180 Tenn. 41, 171 S.W. 281 (1943); McCord v. State, 198 Tenn. 226, 278 S.W.2d 689 (1954); Davis v. State, 1 Tenn.Cr.App.

479, 445 S.W.2d 933 (1969); Ford v. State, 184 Tenn. 443, 201 S.W.2d 539 (1945); Wilson v. State, 2 Tenn.Cr.App. 468, 455 S.W.2d 172 (1970).

The trial court did not err in refusing to direct a verdict of acquittal. See T.C.A. § 40–2529. Obviously, the trial judge was not of the opinion that the evidence was insufficient to warrant a conviction, nor are we of that opinion. This was a case for the jury to decide. State v. Grace, Tenn., 493 S.W.2d 474 (1973).

The remaining assignment of error is directed at the admission over objection of the testimony of Deputy Sheriff Bright concerning the conversation with Berry in which Berry told him that he had come to get his wife and take her to Georgia. The contention is that since a motion was made pre-trial for information regarding any confessions or statements against interest as provided for in T.C.A. § 40–2441, and nothing furnished regarding this conversation, that it should have been excluded. That the statement of Berry was not a confession is obvious, since no crime had been committed at the time of its utterance. Whether or not it was a statement against interest and embraced within the ambit of the statute need not be decided in this case, since even if it were there could be no prejudicial error in the context of this case wherein a complete confession was made by Berry to his sister and brother-in-law after the fact of the slaying.

We are satisfied that the charged crime was committed, and that Berry is guilty. The verdict of voluntary manslaughter shows that the jury took a compassionate view of the State's charge of first degree murder. We affirm the conviction.

OLIVER and DWYER, JJ., concur.