IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 18, 2003

## STATE OF TENNESSEE v. GLEN HOLT

**Direct Appeal from the Criminal Court for Morgan County**
**No. 8773A     E. Eugene Eblen, Judge**

**No. E2003-01100-CCA-R3-CD**
**January 14, 2004**

A Morgan County jury found the Defendant, Glen Holt, guilty of first degree felony murder and aggravated robbery. The trial court sentenced the Defendant to nine years in prison for the aggravated robbery charge, to be served concurrently with a life sentence for the murder conviction. The Defendant appeals, contending: (1) that the evidence was insufficient to support his convictions; (2) that the trial court erred when it allowed a photograph, offered by the prosecution, to be admitted into evidence without a proper foundation; (3) that the jury did not follow the trial court's instructions with regard to felony murder; and (4) that he did not knowingly, voluntarily and intelligently waive his constitutional right to testify in his own defense. Although we conclude that issues (1), (2) and (3) are without merit, the record is insufficient for us to determine whether the Defendant personally and knowingly waived his right to testify. Therefore, we remand the case to the trial court for a hearing to determine whether the Defendant's right to testify was violated, and if so, whether the violation of the Defendant's right to testify was harmless beyond a reasonable doubt.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH, J., joined. JOSEPH M. TIPTON filed a concurring and dissenting opinion.

William Allen, Oak Ridge, Tennessee, for the appellant, Glen Holt.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; John H. Bledsoe, Assistant Attorney General; Scott McCluen, District Attorney General; Roger Delp and Frank Harvey, Assistant District Attorney Generals, for the appellee, State of Tennessee.

## OPINION
### I. Facts

The Defendant, Glen Holt, was indicted for, and found guilty of, felony murder and aggravated robbery. The indictment alleged that the Defendant, Vanessa Baston, Jamie Miller and

Darryl Dixon killed the victim, Charles Parley McCann, on November 19, 2000, during the perpetration of an aggravated robbery. The Defendant's case was severed from the other three co-defendants, and the case was tried by a jury. The following evidence was presented at the Defendant's jury trial.

John Waschevski, an officer with the Morgan County Sheriff's Department, testified that he was on duty on November 19, 2000, when he was called to a residence at 952 Meister Hills Road to investigate a possible death. Officer Waschevski testified that when he arrived at the residence, he saw the victim lying on his back with his head toward the door and his feet underneath the bed. The officer testified that the victim was cold to the touch and that the Emergency Medical Service moved the victim to the ambulance. Officer Waschevski testified that he then noticed a gun lying near the foot of the bed, checked the victim again, and noticed marks on his neck where it "looked like he'd been strangled." Officer Waschevski stated that the officers at the scene called the Morgan County Sheriff and the Tennessee Bureau of Investigation ("TBI") to assist in the investigation.

The autopsy report of the victim, performed by Sandra Elkins, M.D., was admitted into evidence. The report stated that "[d]eath was the result of strangulation. At autopsy, there were also numerous acute rib fractures on the right side."

Jason Legg, an agent with the TBI, testified that he was initially called by the Morgan County Sheriff to the victim's home "under the suspicious circumstances surrounding the death." Agent Legg testified that, upon arriving at the murder scene, he examined the victim's body, which was in the ambulance, and that he then went into the house to investigate. The agent stated that, as part of the investigation, he came into contact with the Defendant and talked with him about the victim's death. Agent Legg testified that, at first, the Defendant denied any knowledge of the victim's death and denied any involvement, stating that he and his girlfriend, Jamie Miller, were at the home of his mother and her boyfriend on the night in question. The agent testified that the following day he called the Defendant and asked him to come to the Sheriff's Department to be interviewed, and the Defendant complied.

Agent Legg stated that during the interview the Defendant was not in custody and gave a sworn statement. The agent stated that he did not advise the Defendant of his constitutional rights. Agent Legg read the sworn statement, which included an affidavit of accuracy signed by the Defendant, into evidence stating:

> On Sunday the 19th day of November 2000 myself, my girlfriend, Jamie Miller, my mom Vanessa Baston and her boyfriend Darryl Dixon, left Alpine and drove to Jamestown. We stopped at the B.P. station and got gas. I drove us to Meister Hills Road in Morgan County. I drove past the trailer of [the victim] and pulled off the road. My mom and I climbed in the bed of the truck, and Darryl drove us to the driveway of [the victim]. My mom and I got out and Darryl and Jamie drove down the road to wait on us. I told them to pick us up at 2:20 a.m. CST. My mom and I went to the front door of [the victim's] trailer. I stood to the left of the door while

mom knocked. [The victim] turned on the porch light and opened the door. Mom told him she had a flat tire and needed to use his phone. [The victim] let my mom in to use the phone. I came up behind [the victim] and got him in a bear hug. My mom was on the phone and had dialed some number. I laid [the victim] down on the floor. [The victim] had got one leg underneath his bed and one on the outside. A leg of the bed was between his legs. [The victim's] head was lying next to his front door. When I laid [the victim] down my mom grabbed him by putting a knee on his chest and hands, and grabbing his throat with one hand and covering his mouth with her other hand. I went to the back bedroom and went through the closet that had a uniform . . . in it. I looked under the beds and went to the kitchen. I searched the cabinets, refrigerator, and cupboard. I searched stuff lying on a table and went to the living room. Mom was in the living room when I came from the back bedroom, but [the victim] started moving and she went back and grabbed his throat and covered his mouth with her hands. I saw a toilet seat in the living room and papers sticking out of the drawer. I went to the front bedroom and found a tin cookie/cake pan with old money, watches, and knives in it. I searched a drawer, but mom took the tin pan. My mom told me to go and she had everything tucked against her chest. I closed the front door behind us. And [the victim] wasn't moving. While in [the victim's] trailer I fell into a small hole in the floor near the back door. The carpet was the only thing covering the hole.

My mom and I ran down Meister Hills Road towards Glades Store. We stopped at Steve Hull's driveway. My mom hid in the woods and I got in the ditch. While we were there my mom took some pills and swallowed them with a couple of handfuls of water from a mud puddle. I saw the truck coming and I waved a flashlight to get them to stop. I got in the driver's seat and drove. I turned around in Steve Hull's driveway, and started toward Alpine. I threw my gloves I was wearing out the window, and so did my mom. My mom also threw out a pill bottle taken from [the victim's trailer]. I drove us to Alpine to my mom and Darryl's trailer. My mom took everything taken from [the victim's] trailer into her trailer. If my mom got money out of the trailer at [the victim's] she would use it for drugs and bills. She was behind on her truck payment and court fines. After Agent Legg and Investigator Richard Ross came and talked to me and Jamie, I told my mom. My mom then burned the tin pan and other things taken from [the victim's] in a refrigerator in her front yard.

The only thing [the victim] said after I grabbed him was, ["]I can't take this.["] Before my mom grabbed him she wiped off the phone handle to remove her prints. She later commented that she hoped she did not leave any prints on the phone.

This statement was admitted into evidence without objection by the Defendant.

Agent Legg testified that after the Defendant made this statement he took the officers, along

with Jamie Miller, to recover the gloves that had been thrown out of the truck. The agent stated that, while the Defendant first denied that he had the gun taken from the victim's trailer, he later produced the gun.

On cross-examination, the agent stated that there was no evidence that either the Defendant or Vanessa Baston had a gun with them at the time of the robbery. Agent Legg stated that the Defendant cooperated with police by giving his statement. Agent Legg testified that, a few days after the Defendant gave his statement, he called the agent and told him that Vanessa Baston was calling and threatening him. The agent stated that everything from his investigation was consistent with what the Defendant told him.

The Defendant offered no additional evidence, and, after deliberating, the jury found the Defendant guilty of first degree murder and aggravated robbery. The trial court sentenced the Defendant to nine years in prison for the aggravated robbery charge, to be served concurrently with his life sentence for the first degree murder conviction.

## II. Analysis

On appeal, the Defendant contends: (1) that the evidence was insufficient to support his convictions; (2) that the trial court erred when it allowed a photograph, offered by the prosecution, to be admitted into evidence without a proper foundation; (3) that the jury did not follow the trial court's instructions with regard to felony murder; and (4) that he did not knowingly, voluntarily and intelligently waive his constitutional right to testify in his own defense.

## A. Sufficiency of the Evidence

The Defendant contends that there was insufficient evidence presented at trial to support his conviction for felony murder or aggravated robbery. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. Buggs, 995 S.W.2d at 105; Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from

the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

The Defendant makes three arguments when contending that the evidence is insufficient to support his convictions. First, he argues that the State presented no evidence to corroborate his statement, and his convictions cannot be founded solely on his confession, but must be supported by corroborating evidence. Second, the Defendant argues that the State presented no evidence to establish that a robbery of the victim occurred or to establish that he had the requisite intent to commit a robbery. Third, he contends that the State failed to prove the identity of the body.

## 1. Corroboration of Confession

With regard to the Defendant's first contention, namely that his conviction cannot rest solely on his confession, we agree that it is a well-established principle of law in this state that a conviction cannot be founded solely upon a defendant's confession, and that, in order to establish the "*corpus delicti*," there must be some corroborating evidence. State v. Smith, 24 S.W.3d 274, 281 (Tenn. 2000) (citing Ashby v. State, 124 Tenn. 684, 139 S.W. 872, 875 (1911)). Literally, *corpus delicti* means the body of the crime. Two elements, which must be proven by the State beyond a reasonable doubt, make up the *corpus delicti*: "(1) That a certain result has been produced, and (2) That the result was created through criminal agency." State v. Ervin, 731 S.W.2d 70, 71-72 (Tenn. Crim. App. 1986). In a homicide case, the two elements of the *corpus delicti* are specifically stated as: (1) the death of a human being, and (2) criminal agency in producing that death. State v. Shepherd, 902 S.W.2d 895, 901 (Tenn. 1995). In other words, the State must show that the death was committed through the criminal acts of the accused. See Kyle v. State, 208 Tenn. 170, 344 S.W.2d 537, 538 (1961). Whether the State has sufficiently established the *corpus delicti* is primarily a jury question. State v. Jones, 15 S.W.3d 880, 891 (Tenn. Crim. App. 1999).

While the *corpus delicti* cannot be established solely by the defendant's statements, any other statements may be considered along with any other evidence, both direct and circumstantial to prove the *corpus delicti*. Shepherd, 902 S.W.2d at 901. Where there is a confession, the corroborative evidence "need not be as convincing as the evidence necessary to establish a *corpus delicti* in absence of any confession." Ricketts v. State, 192 Tenn. 649, 654-55, 241 S.W.2d 604, 606 (1951). The "'evidence is sufficient if . . . it tends to connect the defendant with the commission of the offense, although the evidence is slight, and entitled, when standing by itself, to but little consideration.'" Smith, 24 S.W.3d at 281 (quoting Ricketts, 241 S.W.2d at 606). The *corpus delicti* may be proven by circumstantial evidence, and only slight evidence of the *corpus delicti* is required to corroborate a confession and to sustain a conviction. State v. Ellis, 89 S.W.3d 584, 600 (Tenn. Crim. App. 2000); State v. Jones, 15 S.W.3d 880, 891 (Tenn. Crim. App. 1999). "A confession may sustain a conviction where there is other evidence sufficient to show the commission of the crime by someone." Taylor v. State, 479 S.W.2d 659, 661-62 (Tenn. Crim. App. 1972).

In the case presently before us, the Defendant's confession was corroborated by numerous means. First, the crime scene was exactly as the Defendant described in his confession. The position of the victim's body was as the Defendant described, including such details as the position of the victim's legs around the bed and the location of the victim's head. The items taken from the victim's house matched the items that the Defendant confessed were taken. Further, the gloves that the Defendant confessed that he wore and subsequently threw by the side of the road were located. The Defendant confessed that his mother strangled the victim and the autopsy report, which was admitted into evidence, showed that the cause of the victim's death was strangulation. The corroborative evidence necessary to support the *corpus delicti* need only support "the essential facts . . . to justify a jury inference of their truth." Opper v. United States, 348 U.S. 84, 93 (1954). The State has satisfied this standard.

## 2. Robbery Conviction

The Defendant next argues that the State presented no evidence to establish that an aggravated robbery of the victim occurred and no evidence to establish that he had the requisite mental state to commit a robbery. Our statute defines first degree murder, in part, as "[a] killing of another committed in the perpetration of or attempt to perpetrate any . . . robbery . . . ." Tenn. Code. Ann. § 39-13-202(a)(2). The code further states that "[n]o culpable mental state is required . . . except the intent to commit the enumerated offenses or acts . . . ." Tenn. Code Ann. § 39-13-202(b). Additionally, the death must occur "in the perpetration of" the enumerated felony. State v. Madden, 99 S.W.3d 127, 135 (Tenn. Crim. App. 2002) (citing State v. Hinton, 42 S.W.3d 113, 119 (Tenn. Crim. App. 2000)).

The Tennessee Supreme Court has stated that "in order for the felony-murder doctrine to be invoked, the actor must intend to commit the underlying felony at the time the killing occurs" and that "there is no felony-murder where the felony occurs as an afterthought following the killing." Buggs, 995 S.W.2d at 107. The law does not require that the felony necessarily precede the murder in order to support a felony-murder conviction. Id. at 106. The killing may precede, coincide with, or follow the felony, so long as there is a connection in time place, and continuity of action. Id.; see State v. Pierce, 23 S.W.3d 289, 294-97 (Tenn. 2000). Proof of the intention to commit the underlying felony and at what point it existed are questions of fact to be decided by the jury after consideration of all the facts and circumstances. Madden, 99 S.W.3d at 135; see Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973); State v. Holland, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993). A jury may reasonably infer from a defendant's actions immediately after a killing that the defendant had the intent to commit the felony prior to, or concurrent with, the killing. Buggs, 995 S.W.2d at 108.

The Defendant contends that the evidence was insufficient to sustain the conviction for felony murder because there was no proof that a robbery occurred and because there was no proof that he had the requisite intent to commit that robbery.

Aggravated robbery is defined as "the intentional or knowing theft of property from the

person of another by violence or putting the person in fear," Tennessee Code Annotated section 39-13-401(a) (2003), "[w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-402(a)(2) (2003). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (2003). "Deprive" means to "[w]ithold property from the owner permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner." Tenn. Code Ann. § 39-11-106(a)(8)(A). "Serious bodily injury" includes "[a] substantial risk of death." Tenn. Code Ann. § 39-11-106(a)(34)(A).

The evidence, viewed in a light most favorable to the State, established that the Defendant and his mother went to the victim's home under the pretense of needing to use the phone. The Defendant grabbed the victim and forced him to the ground, and the victim said, "I can't take this." The Defendant's mother assisted in, and then took over, restraining the victim, and then the Defendant saw his mother strangling the victim. While this was occurring, the Defendant looked for items to steal from the house. The Defendant used gloves during the commission of this offense, and he disposed of these gloves after the offense by throwing them out the window of his the truck. The gloves were later located by police. After first denying that he took a gun from the victim's home, the Defendant returned the gun taken from the victim's home to Agent Legg. This evidence is sufficient to show that the Defendant committed aggravated robbery, and that the Defendant participated in the felony murder of the victim during the perpetration of the robbery.

### 3. Identity of the Body

The Defendant next asserts that the State did not meet its burden regarding the identification of the victim's body. Identity of the body is an essential element of the *corpus delicti*. See Berry v. State, 523 S.W.2d 371, 374 (Tenn. Crim. App. 1974); see also Bolden v. State, 140 Tenn. 118, 203 S.W. 755 (1918). While it is true that, to sustain the Defendant's conviction, the State must have proven that the Defendant murdered the individual named in the indictment, identification may be proven by circumstantial evidence. Berry, 523 S.W.2d at 374; State v. Pipkin, No. M1999-00870-CCA-OT-PC, 2001 WL 1398133, at *3 (Tenn. Crim. App., at Nashville, Nov. 9, 2001) *no perm. to appeal filed*.

The evidence, viewed in the light most favorable to the State, showed that the victim's body was identified as that of Charles McCann. The Defendant and his mother went to "the trailer of Charles McCann" which was located on "Meister Hills Road" and the Defendant "came up behind McCann and got him in a bear hug [and then] . . . laid McCann down on the floor." After "McCann started moving, [the Defendant's mother] went back and grabbed his throat and covered his mouth with her hands" while the Defendant searched the house for items to steal. Officer Waschevski was called to 952 Meister Hills Road to investigate a death, and when he arrived "there lay Mr. McCann, with his head facing to the door on his back." The body of Mr. McCann was taken by ambulance to the coroner's officer for an autopsy. The officer identified a picture of Mr. McCann that was taken after his death. The autopsy report listed Mr. McCann as the victim. This evidence is sufficient to establish the identity of the body. We are not only satisfied with the sufficiency of the

evidence establishing the identify of the body, but we also find support for this holding by the fact that the cause of death is circumstantially shown by the confession as strangulation, and the other evidence, including the photograph and autopsy report, is consistent with the strangulation death described in the confession.

## B. Photograph of the Victim

The Defendant contends that the trial court erred when it allowed the State to admit into evidence a photograph of the victim without laying the proper foundation of "where or when the picture was taken" and because when the photograph was introduced "there was no testimony or other evidence identifying the body that was found by the deputy." In Tennessee, admissibility of evidence is within the sound discretion of the trial judge. State v. Saylor, 117 S.W.3d 239, 247 (Tenn. 2003). The admission of photographs is generally at the discretion of the trial court and, absent an abuse of that discretion, will not result in the grant of a new trial. State v. Dickerson, 885 S.W.2d 90, 92 (Tenn. Crim. App. 1993).

A photograph is admissible if it is relevant to an issue in dispute and if its probative value is not outweighed by its prejudicial effect. Tenn. R. Evid. 403. The determination of whether proffered evidence is relevant in accordance with Tennessee Rule of Evidence 402 is left to the sound discretion of the trial judge, as is the determination of whether the probative value of evidence is substantially outweighed by the possibility of prejudice pursuant to Tennessee Rule of Evidence 403. State v. Kennedy, 7 S.W.3d 58, 68 (Tenn. Crim. App. 1999) (citing State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995)); State v. Burlison, 868 S.W.2d 713, 720-21 (Tenn. Crim. App. 1993). In making these decisions, the trial court must consider the questions of fact that the jury will have to consider in determining the accused's guilt, as well as other evidence that has been introduced during the course of the trial. State v. Williamson, 919 S.W.2d 69, 78 (Tenn. Crim. App. 1995). We will only disturb an evidentiary ruling on appeal when it appears that the trial judge arbitrarily exercised his discretion. State v. Baker, 785 S.W.2d 132, 134 (Tenn. Crim. App. 1989).

Initial questions of admissibility of evidence are governed by Tennessee Rules of Evidence 401 and 403. These rules require that the trial court must first determine whether the proffered evidence is relevant. Pursuant to Rule 401, evidence is deemed relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." See Forbes, 918 S.W.2d at 449. In other words, "evidence is relevant if it helps the trier of fact resolve an issue of fact." Neil P. Cohen, et al., *Tennessee Law of Evidence* § 4.01[4], at 4-8 (4th ed. 2000). After the trial court finds that the proffered evidence is relevant, it then weighs the probative value of that evidence against the risk that the evidence will unfairly prejudice the trial. State v. James, 81 S.W.3d 751, 757 (Tenn. 2002). If the court finds that the probative value is substantially outweighed by its prejudicial effect, the evidence may be excluded. Tenn. R. Evid. 403. "'Excluding relevant evidence under this rule is an extraordinary remedy that should be used sparingly and persons seeking to exclude otherwise admissible and relevant evidence have a significant burden of persuasion.'" James, 81 S.W.3d at

757-58 (quoting <u>White v. Vanderbilt Univ.</u>, 21 S.W.3d 215, 227 (Tenn. Ct. App. 1999)).

To be admissible, a photograph must be relevant to some issue at trial and the danger of unfair prejudice, confusion of the issues, or misleading the jury must not substantially outweigh its probative value. Tenn. R. Evid. 403; <u>State v. Banks</u>, 564 S.W.2d 947, 949 (Tenn. 1978); <u>State v. Gallaher</u>, No. E2001-01876-CCA-R3-CD, 2003 WL 21463017, at *2 (Tenn. Crim. App., at Knoxville, June 25, 2003). Before any photograph can be admitted into evidence it must be verified and authenticated by a witness with knowledge of the facts. <u>Banks</u>, 564 S.W.2d at 949-50. In <u>Banks</u>, the supreme court gave the trial courts guidance for determining the admissibility of relevant photographic evidence. A trial court should consider: the accuracy and clarity of the picture and its value as evidence; whether the picture depicts the body as it was found; the adequacy of testimonial evidence in relating the facts to the jury; and the need for the evidence to establish a prima facie case of guilt or to rebut the defendant's contentions. <u>Id.</u>

In the case under submission, the photograph is clear and has significant evidentiary value. The State called Officer Waschevski, who was the officer first called to the scene of the crime, to testify about the crime scene. The officer testified that, when he arrived at the scene of the crime, he found the victim, whom he identified as Mr. McCann, lying on the floor of the trailer. After so testifying, the prosecutor showed the officer a photograph of the victim. The following dialog occurred:

> State: Let me show you what will be marked as State's Exhibit One . . . . If you would look at this and see if you can tell us if this is a fair and accurate representation of the individual that you saw there at that time?
> Officer Waschevski: Yes, it is.
> State: Your Honor, we would seek to move this in as State's Exhibit Number One and ask to pass it to the jury at this time.
> Defense: Your Honor, I don't think there's been a proper foundation to send it to the jury at this point. We don't know where the picture was taken, or when it was taken, or anything like that.
> State: Your Honor, he doesn't have to be the person that takes it. That's a fair and accurate representation of the individual.
> Court: Overrule the objection. Pass it to the jury.

We hold that the trial court did not abuse its discretion when it admitted the photograph. A proper foundation was laid in that the officer testified that the photograph was a fair and accurate representation of the victim. The photograph was probative in multiple ways: to show that the victim had red markings on his neck indicative of strangulation; to show the age of the victim depicting the ease with which he could be overpowered; and to corroborate the officer's testimony that he found the victim lying on his back on the floor. This probative value was not outweighed by any prejudice to the Defendant. The picture was not particularly gruesome, nor was it cumulative evidence. Therefore, we find that this issue raised by the Defendant is without merit.

## C. Trial Court's Instructions

The Defendant contends that the jury did not follow the trial court's instructions. Specifically, he asserts that the trial court did not instruct the jury on criminal responsibility for conduct of another and only instructed the jury on criminal responsibility for facilitation of a felony. He states that if the jury found that he did not actually strangle the victim it would have to find the Defendant criminally responsible for the actions of his mother to properly convict him of felony murder. The Defendant asserts that because the jury was not instructed on this offense, it could not have properly convicted him of felony murder.

Contrary to the Defendant's assertion in his brief that "the only instruction related to criminal responsibility given by the trial court related to facilitation of a felony," the record indicates that the trial court instructed the jury on criminal responsibility for conduct of another. The trial court instructed the jury that:

> The defendant is criminally responsible for an offense committed by the conduct of another if acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense the defendant solicits, directs, aids, or attempts to aid another person to commit the offense.
>
> A defendant who is criminally responsible for an offense may be found guilty not only of that offense but also for any other offense or offenses committed by another. If you find beyond a reasonable doubt that the other offense or offenses committed were natural and probable consequences of the original offense for which the defendant is found criminally responsible, and that the elements of the offense have been proven beyond a reasonable doubt.

We find that this is an accurate statement of the law and that the trial court did not err in instructing the jury and the jury is presumed to have followed those instructions.

## D. Defendant's Right to Testify

The Defendant asserts that he did not knowingly, voluntarily and intelligently waive his constitutional right to testify in his own defense. At trial, the Defendant's counsel requested a "a minute, please" from the judge, who subsequently ordered the jury to leave open court. Thereafter, the Defendant's counsel stated:

> Your Honor, Mr. Holt has decided not to take the stand, so we won't be putting on his testimony. I just wanted to make you aware of that. Whether you want to inquire of him as to his -- I've advised him of his rights to testify and not to testify, and I think he understands those. I didn't know whether you -

The court then asked the Defendant: "Do you understand your rights, and you're not going to take

the stand and testify?" and the record states that "Defendant indicates affirmatively." When ruling on this issue in the order on the Defendant's motion for new trial, the trial court stated:

> Regarding [the issue] . . . that [the] defendant [did] not properly waive his right to testify, the Court finds that the harmless error analysis is the appropriate investigation on this issue. The State had introduced a six page sworn confession made by [the] defendant to T.B.I. Special Agent Jason Legg which purported to catalogue this defendant's involvement, along with his mother, in the murder and robbery of Charles McCann. He made the first assault on Mr. McCann after his mother convinced the victim to allowed her into his home at about 2:00 A.M. to use his phone to summon help due to her vehicle having a flat tire. The decision not to testify was an intelligent decision. Cross examination would have only added more details to an otherwise terrible event. It is the Court's opinion that testifying in his own behalf under the circumstances would not have changed the verdict of the jury.

It is unquestionable that a criminal defendant has a fundamental, constitutional right to testify at trial. Momon v. State, 18 S.W.3d 152, 157 (Tenn. 1999). This fundamental right may only be waived personally by the defendant. Id. at 161. "Generally, a right that is fundamental and personal to the defendant may only be waived if there is evidence in the record demonstrating 'an intentional relinquishment or abandonment of a known right or privilege.'" Id. at 161-62. A waiver of this right may not be presumed by a silent record. Id. at 162. To ensure that the defendant's right to testify has been personally waived by the defendant, the court in Momon adopted procedural guidelines that call for defense counsel to request a hearing outside the presence of the jury to demonstrate that the defendant's waiver of the right to testify has been knowingly, intelligently, and voluntarily made. See id. at 163; State v. Posey, 99 S.W.3d 141, 148-49 (Tenn. Crim. App. 2002). There is no evidence in the record that the procedural guidelines established by Momon were followed. Furthermore, there is no evidence, other than the Defendant "indicat[ing] affirmatively," to "establish that the right was otherwise personally waived by the defendant." Momon, 18 S.W.3d at 163. Therefore, we remand this case for the trial court to determine whether the Defendant personally waived his right to testify and whether, if he had wished to testify, the denial of the right was harmless beyond a reasonable doubt.

In determining whether the State proved that the constitutional violation is harmless beyond a reasonable doubt, courts should consider the following factors: (1) the importance of the defendant's testimony to the defense's case; (2) the cumulative nature of the testimony; (3) the presence or absence of evidence corroborating or contradicting the defendant on material points; and (4) the overall strength of the prosecution's case. See id. at 167. The above factors "are merely instructive and not exclusive considerations." Id. at 168.

As was the case in Momon and Posey, there is not sufficient evidence in the record for this Court to give full consideration to these factors. We have no indication of what the substance of the Defendant's testimony would have been had he testified. Finding this to be the case, we conclude that the case must be remanded to the trial court for the determination of whether the Defendant did,

in fact, knowingly waive his right to testify on his own behalf. If he did not, then a hearing must be held at which the State will bear the burden of establishing that the denial of the Defendant's right to testify on his own behalf was harmless beyond a reasonable doubt. If the trial court concludes that the State meets its burden, the Defendant's conviction will be sustained. However, if the State fails to prove that the error was harmless beyond a reasonable doubt, the trial court must vacate the Defendant's convictions and grant the Defendant a new trial.

### III. Conclusion

We therefore REMAND this case to the trial court for proceedings consistent with this opinion.

_____
ROBERT W. WEDEMEYER, JUDGE