# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
August 14, 2013

## STATE OF TENNESSEE v. CHRISTOPHER LEWIS

**Appeal from the Criminal Court for Putnam County**
**No. 10-0875     David A. Patterson, Judge**

_____

**No. M2013-00212-CCA-R3-CD - Filed November 27, 2013**

_____

JAMES CURWOOD WITT, JR., J., dissenting.

I respectfully disagree with the majority's holdings that the evidence was sufficient to convict the defendant of second degree murder.

The majority correctly recites rules of appellate review: The appellate court does not reweigh the evidence, determine the credibility of witnesses, or replace the fact-finder's inferences with the court's own inferences. The appellate court is, however, empowered – indeed, is obliged – to determine that *enough* evidence *exists*. To be sure, the existing evidence is reviewed on appeal in the light most favorable to the prosecution, but it is reviewed against the backlight of the prosecution's burden to prove beyond a reasonable doubt the elements of the charged offense to any rational trier of fact – and it is a real *burden*, not a mere guideline. Recent decisions in Tennessee that equate circumstantial evidence with direct evidence do not change the measure of evidence in a criminal case. The measure is that the prosecution prove its case beyond a reasonable doubt and not that it prove its case as best it can under the circumstances. In our society, we long ago decided that the principle of heavily burdening the government in a criminal case was essential to ordered liberty under a rule of law, knowing – and willing to accept – that not all crimes can be proven under the reasonable doubt standard. So central is the notion to our polity that the requirement is deemed a function of due process of law. *See In re Winship*, 397 U.S. 358 (1970).

So, with this rather homiletic preface, I look at the present case. "To establish that a defendant committed a second degree murder, the State has the burden of proving beyond a reasonable doubt that (1) the defendant killed the victim, and (2) the defendant

committed the killing with a 'knowing' state of mind." *State v. Parker*, 350 S.W.3d 883, 904 (Tenn. 2011).

With respect to the first element, the State failed to prove that the defendant's actions caused the death of the deceased. To be sure, Tennessee law does not require that the cause of death "'be scientifically proven in every case.'" *See State v. Driver*, 634 S.W.2d 601, 606 (Tenn. Crim. App. 1981), *perm. app. denied* (Tenn. Sept. 28, 1981) (quoting *Berry v. State*, 523 S.W.2d 371, 374 (Tenn. Crim. App. 1974), *perm. app. denied* (Tenn. Apr. 14, 1975)). The law does require, however, that the State prove "that death was not occasioned by natural causes, by accident, or by the deceased in person." *State v. Shepherd*, 902 S.W.2d 895 (Tenn. 1995) (citing *Davis v. State*, 445 S.W.2d 933, 935 (Tenn. 1969)).

In the instant case, Doctor Deering was unable to determine either the cause or the manner of the deceased's death. The majority relies in part upon Doctor Deering's statement that suffocation could not be eliminated as the cause of death, but the majority fails to point out that the doctor's comments about suffocation were not advanced by him sua sponte; rather, he responded to the prosecutor's question about the possibility of suffocation. In other words, the State, not Doctor Deering, brought it up and did so without any impetus from the proof.[1] In any event, Doctor Deering also testified that he could find no evidence to support a finding of suffocation, and he even admitted that his consideration of suffocation in this case was due to his being notified by investigators of "suspicious circumstances."

Notably, Doctor Deering testified that the left ventricle of the deceased's heart was "a little thick," suggesting that her heart might have been "a little bit large" for her body, which could lead to "fatal arrhythmias of the heart." He also agreed that the deceased was "quite large for her height," that "the larger you are, the more health problems you may have," and that an enlarged heart "in somebody who is two hundred twenty eight pounds can be a cause of sudden death." Thus, Doctor Deering left open the possibility that the victim's death was the result of a coronary event.

I have endeavored to put Doctor Deering's testimony into the proper perspective of appellate review and to avoid any tendency to overrate his testimony. Certainly, to the trier of fact, the medical testimony was at bottom beneficial *to the defendant*. Moreover, Doctor Deering was not only an expert, he was the *State's* expert. These circumstances, however, do not displace the long-standing principles of appellate review that we view the sufficiency of the evidence in the light most favorable to the State and indulge the State all reasonable inferences from the evidence. The jury, as the trier of fact, was "'free

---

[1]The posing of the hypothetical by the State causes one to wonder whether a more outlandish "possibility" would not have also garnered the doctor's accession.

to accept or reject any part . . . under elementary rules for considering evidence.'" *State v. Charles Brandon Hanner*, No. M2005-01944-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Nashville, June 8, 2006) (quoting *State v. Roger W. Teague*, No. 85-210-III, slip op. at 3 (Tenn. Crim. App., Nashville, August 19, 1986)). As an appellate court, we are not permitted to disturb what may be the jury's rejection of the portions of Doctor Deering's testimony that were beneficial to the defendant. On the other hand, unless I purely speculate, I find nothing in Doctor Deering's testimony from which to infer the defendant's culpability. Accordingly, in quantifying the evidence in the case, my view of Doctor Deering's testimony is that it is essentially neutral. He only acceded to *possibilities* for the deceased's cause of death, one of which was a natural cause of death.

That said, the most significant evidence could have been the defendant's admitting that he and the deceased argued and that he had struck her. This realization, however, implicates the rule that "a conviction cannot be based solely on a defendant's confession and, therefore, . . . the State must present some corroborating evidence to establish the corpus delicti." *See State v Banks*, 271 S.W.3d 90, 140 (Tenn. 2008) (citing *State v. Smith*, 24 S.W.3d 274, 281 (Tenn. 2000)). The term corpus delicti refers to "the body of the crime [or] evidence that a crime was committed at the place alleged in the indictment," and the State needs "only slight evidence of the corpus delicti . . . to corroborate a confession and sustain a conviction." *Smith*, 24 S.W.3d at 281. When a defendant confesses to a crime, the corroborating evidence "'need not be as convincing as the evidence necessary to establish a corpus delicti in the absence of any confession.'" *State v. Housler*, 193 S.W.3d 476, 490 (Tenn. 2006) (quoting *Ricketts v. State*, 241 S.W.2d 604, 606 (Tenn. 1951)). All elements of the corpus delicti may be established by circumstantial evidence. *State v. Garmon*, 972 S.W.2d 706, 708 (Tenn. Crim. App. 1998). I note, however, that "mere opportunity or proximity of the defendant to the victim" has not been found to be a sufficient corroborating circumstance. *State v. James Michael Moffitt*, No. E2003-01614-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Knoxville, Dec. 13, 2004).

Significantly, the corpus delicti consists of two elements: (1) a certain result has been produced, and (2) some person is criminally responsible for the act. *State v. Shepherd*, 862 S.W.2d 557, 564 (Tenn. Crim. App. 1992). Although a result of death of the deceased was established in the present case, no evidence established that anyone, much less the defendant, was criminally responsible for that result. To be sure, the defendant absented himself from the marital home for a while following the discovery of the deceased's body, and a large hole had been dug on the property. These circumstances, however, are rather ambiguous. In my view, they do not equate to the slight evidence required to corroborate the corpus delicti.

Most importantly, however, the State did not rely upon the report of the defendant's striking the deceased as a theory of the deceased's death. In its final argument to the jury, the prosecutor argued as follows:

> Now Dr. Deering did testify he can't determine the cause of death. Because suffocation doesn't leave any signs of death. And the state doesn't have to prove cause of death, because if we had to prove cause of death, suffocating somebody would be a get out of jail free card, because it doesn't leave evidence. But he couldn't rule it out. There was nothing else that would cause this lady's death. So it is reasonable, based on the evidence, that she was suffocated.
>
> . . . .
>
> And how long does it take to cut the oxygen off from somebody and end their life? Two to three minutes. So you've got to take the woman, the mother of your children, you have to cover her airway.
>
> ([The prosecutor] demonstrates with his hand.)
>
> That's thirty seconds. I've been doing this for thirty seconds. If you end somebody's life that way, you have to do it for at least two minutes. You've got time to settle down, you've got time to realize you're taking someone's life. That's the knowing part.
>
> You cannot allow this man to escape justice [be]cause he chose a way to murder his wife that doesn't leave evidence and allows the evidence to rot away. There is no other reasonable explanation for her death except suffocation, based on all of this evidence.

Clearly, the State pursued the theory of suffocation and not the defendant's striking the deceased as the cause of her death. The difficulty with this approach is that no evidence established anything more than a mere possibility that the deceased was suffocated. The prosecution's statement that "nothing else . . . would cause this lady's death" is not an accurate reflection of the evidence. Doctor Deering allowed about the same degree of

possibility that the death emanated from a heart malfunction as he did to suffocation as a cause. To derive more from his testimony would be speculative.

Additionally and aside from the corpus delicti subissue, the proof is insufficient to establish that the defendant *knowingly* killed the deceased. Our supreme court has addressed this element of second degree murder as follows:

> Because this Court has determined that "[s]econd degree murder is a result of conduct offense," *State v. Brown*, 311 S.W.3d 422, 431-32 (Tenn. 2010), "[t]he 'nature of the conduct' that causes death or the manner in which one is killed is inconsequential under the second degree murder statute. The statute focuses purely on the result and punishes an actor who knowingly causes another's death." *State v. Ducker*, 27 S.W.3d 889, 896 (Tenn. 2000). Thus, the proof to support the mens rea element of second degree murder needs to demonstrate beyond a reasonable doubt only that the accused "knew that his or her actions were reasonably certain to cause the victim's death." *Brown*, 311 S.W.3d at 432.

*Parker*, 350 S.W.3d at 904. The court in *Parker* found that the evidence was insufficient to prove that the defendant had acted "knowingly" in causing the victim's fatal injury:

> The only proof that he caused a head injury to the victim are the victim's reports that Defendant "put her to the ground" and that she subsequently suffered a headache. A reasonable inference from this proof is that, during the attack, the victim struck her head on the floor with sufficient force to cause the fatal injury. There is no proof in the record, however, indicating that Defendant was aware that his treatment of [the victim] was "reasonably certain" to cause her death. For instance, there is no proof whatsoever that Defendant deliberately slammed [the victim's] head onto a hard surface in an accelerated manner. Indeed, the autopsy indicated no wounds to the exterior of [the victim's] head that might be expected from such treatment. Additionally, there is no proof in the record that simply pushing someone to the floor . . . is reasonably certain to cause their death. . . . Thus, we agree that there is not sufficient proof in the record to establish that Defendant "knowingly" killed the victim.

*Id.* at 904-05.

Turning to the facts of the case at bar and indulging every legitimate view of the evidence in favor of the State, the proof showed that the deceased was found dead in the floor of her bedroom on August 1. Mr. Beaty testified that the defendant told him that, on the evening of July 30, he had gotten into an argument with the deceased, that the deceased had hit him with a beer bottle, that he had hit her back, and that he then left, returning on Sunday afternoon to discover that she was dead. Although Mrs. Lewis claimed at trial that she had lied, she told Detective Golden shortly after the discovery of the deceased's body that her son had admitted arguing with his wife and that the deceased had hit him in the head with a beer bottle. On the 9-1-1 recording, Mrs. Lewis made similar statements. Mr. Ownby testified that the defendant told him that he and the deceased had an argument. The medical examiner, however, found no evidence of trauma anywhere on the body of the deceased.

As in *Parker*, nothing indicates that the defendant in the present case knew that his actions – whatever they were – were "reasonably certain" to result in the victim's death. I agree the expert testimony supports a finding that a killing via suffocation would imply a knowing killing, but as explained above, nothing in the record shows that the defendant suffocated the victim. Also, nothing indicates that any striking of the victim was intense enough to cause a reasonable expectation of death. Taken together, the evidence is simply not enough to demonstrate beyond a reasonable doubt that the defendant knowingly caused the death of the victim.

Accordingly, I would hold that the evidence is insufficient to support the defendant's conviction of second degree murder.

_____
JAMES CURWOOD WITT, JR., JUDGE